U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*
**United States Bankruptcy Judge**

**Signed October 07, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Josefina Rodriguez Garza, | § | CASE NO. 11-32996-SGJ-13 |
| | § | |
| DEBTOR. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT [DE # 15]**

Before this court is the Motion to Compel Debtor to Assume or Reject Executory Contract (the "Motion to Compel") [DE # 15] filed by 1G Capital, LLC ("1G Capital") on May 27, 2011. Specifically, the Motion to Compel seeks an order from this court compelling the Chapter 13 Debtor, Josefina Rodriguez Garza (the "Debtor"), to assume or reject a contract for deed dated December 15, 2004, pursuant to which the Debtor agreed to purchase certain residential real property located at 3342 Ivandell Avenue, Dallas, Texas from 1G Capital. The court has core jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A),(B) and (O). For the reasons stated below, the court is denying the

1

Motion to Compel. This memorandum opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate, a finding of fact should be construed as a conclusion of law and *vice versa*.

## I. FINDINGS OF FACT

1. The Debtor maintains a homestead at 3342 Ivandell Avenue, Dallas, Texas 75211 (the "Homestead Property"). The Debtor acquired her interest in the Homestead Property after executing a contract for deed (the "Contract") with 4G Holdings, Ltd. ("4G Holdings") on December 15, 2004.[1] 4G Holdings subsequently executed an assignment of its interest in the Contract to 1G Capital.

2. Under the terms of the Contract, the Debtor was required to make monthly installment payments starting on January 15, 2005 in the amount of $733.49 and on the fifteenth day of each subsequent month until December 15, 2035. In consideration for this monthly payment, the Debtor would have full use and enjoyment of the Homestead Property and, upon completion of all payments due under the Contract, 1G Capital would convey legal title of the Homestead Property to the Debtor.

3. After making monthly payments under the Contract for

---

[1] The Debtor's non-filing spouse, Jose Edmundo Garza, was also a signatory on the Contract.

several years, the Debtor eventually defaulted under the Contract by failing to make the monthly payment due on December 15, 2009. Thereafter, the Debtor failed to make the monthly payment due under the Contract for January through December of 2010 and January through May of 2011.

    4.   On May 2, 2011, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code.

    5.   On May 25, 2011, 1G Capital filed the Motion to Compel. The Motion to Compel sought an order from the bankruptcy court to not only compel the Debtor to either assume or reject the Contract, but also, should the Debtor ultimately seek to assume the Contract, 1G Capital requested that the court compel the Debtor to "promptly cure" the default under the Contract and bring the account current. *See* 11 U.S.C. § 365(a) & (b)(1)(A). As of the filing of the Motion to Compel, 1G alleged that the Debtor had a delinquent arrearage under the Contract of $7,114.76.

    6.   On July 28, 2011, the Debtor filed its Brief in Opposition to the Motion to Compel (the "Response") [DE # 26]. In its Response, the Debtor argued that, because of certain amendments that were made in recent years to the Texas Property Code by the Texas Legislature with regard to contracts for deed, the Contract at issue was really more in the nature of a secured financing agreement on the Debtor's principal residence (*i.e.*, a

mortgage),[2] rather than an executory contract, and the Debtor should be permitted to cure the default over time under the terms of its chapter 13 plan, similar to what is allowed for a traditional mortgage pursuant to Section 1322(b)(5) of the Bankruptcy Code.

7. On August 8, 2011, 1G Capital filed its Brief in Support of the Motion to Compel, urging the court to treat the Contract as an executory contract under Section 365 of the Bankruptcy Code, thereby requiring the Debtor to "promptly cure" its default under the Contract. *See* 11 U.S.C. § 365(b)(1)(A). 1G Capital further argued that "prompt" cure of the default would not be satisfied if the Debtor chose to cure it over the life of her chapter 13 plan.

## II. CONCLUSIONS OF LAW

*A.   Contracts for Deed Under Texas Law and the Bankruptcy Code*

The issue before this court is whether the Contract should be treated as an executory contract, with regard to which defaults must be "promptly cured," pursuant to Section 365(b)(1)(A) of the Bankruptcy Code, or whether the court should treat the Contract more like a traditional residential home

---

[2] The court uses the colloquial term "mortgage" at places in this opinion to refer to a secured borrowing arrangement on a borrower's principal residence. Deeds of Trust (with promissory notes) are typically the instruments used in the State of Texas (rather than "mortgages") to grant lenders security interests in borrowers' homes.

mortgage, and permit the Debtor to cure any default over the life of her chapter 13 plan pursuant to Sections 1322(b)(3) and (b)(5) of the Bankruptcy Code.

"Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979).  Thus, the court should look to Texas law to determine the true nature of the Contract.  Under Texas law, a traditional contract for deed exists where the vendee of the property pays the purchase price directly to the vendor in installments over an extended period of time.  Once the full purchase price is paid to the vendor, the vendee is then given legal title to the property.  This concept is usually explained in terms of the difference between an "equitable right" and an "equitable title."  *In re Waldron*, 65 B.R. 169, 173 (Bankr. N.D. Tex. 1986).  If one possesses an equitable right, it means that the vendee will be construed to have no actual interest in the real property until certain conditions are met, and so long as these obligations remain unperformed, the interest that the vendee has in the real property is simply his right to perform under the contract.  *Id.*  However, if the vendee ultimately completes his performance under the contract, then the vendee receives "equitable title" to the property and has a right to demand from the vendor that the property be conveyed to him as a matter of law.  *Id.*

5

In Texas, it has historically seemed well settled that contracts for deed are considered executory contracts, not security devices. *Id.* Courts in Texas have long held that, until the purchase price is paid in full to the vendee under a contract for deed, the vendee only has an "equitable right" to complete the contract for deed, and not equitable title to the property. *See Johnson v. Wood*, 157 S.W.2d 146, 148 (Tex. 1941). The reasoning in *Johnson* has been adopted and followed in numerous Texas courts. *See, e.g., Jensen v. Bryson*, 614 S.W.2d 930, 933 (Tex. App.—Amarillo 1981, no writ); *Atkins v. Carson*, 467 S.W.2d 495, 500 (Tex. App.—San Antonio 1971, writ ref'd n.r.e.); *Gaona v. Gonzales*, 991 S.W.2d 784, 787 (Tex. App.—Austin 1999, no pet.). *But see Lesson v. City of Houston*, 243 S.W. 485, 490 (Tex. 1922). Moreover, numerous bankruptcy courts have likewise held that contracts for deed executed in Texas are executory contracts for purposes of section 365 of the Bankruptcy Code. *See In re Gonzalez*, No. 04-49435-dml-13, at *6-7 (Bankr. N.D. Tex. Jan. 3, 2006); *Waldron*, 65 B.R. at 173-75; *Rancho Chamberino, Inc. v. B.F.W. Enters., Inc. (In re Rancho Chamberino, Inc.)*, 89 B.R. 597, 600 (W.D. Tex. 1987); *In re Finley*, 138 B.R. 181, 182 (Bankr. E.D. Tex. 1992); *In re Von Keisler*, 166 B.R. 620, 621 (Bankr. N.D. Tex. 1994).

B.    The Amendments to the Texas Property Code

Despite this abundance of historical authority, this court

finds that, as a result of significant changes that the Texas Legislature made to chapter 5 of the Texas Property Code beginning in 1995, a contract for deed, under certain, specific circumstances, should now more properly be characterized as a secured financing arrangement rather than as an executory contract.  *See* Tex. Prop. Code Ann. §§ 5.061, 5.063, 5.066–.072, 5.074–.076, 5.078–.080 (West 2001), §§ 5.064, 5.065 (West 2003), §§ 5.062, 5.0621, 5.073, 5.077, 5.081-5.085 (West 2005).[3]

As a bit of background, in 1995, the Texas Legislature amended chapter 5 of the Texas Property Code to address serious abuses in the Texas-Mexico border region known as "the colonias," a rural and poor area of Texas, where many residents were financing the purchase of their homestead properties through contracts for deed.  *See De La Cruz v. Brown*, 109 S.W.3d 73, 76 (Tex. App.—El Paso 2003), *rev'd on other grounds*, 156 S.W.3d 560 (Tex. 2004).  The Texas Legislature perceived that amendments to the law were needed in order to provide specific legal protection to these purchasers.  Although the 1995 amendments to the Texas Property Code dealing with contracts for deed only applied to properties located in the *colonias*,[4] the Texas Legislature

---

[3] *See* Footnote 6 *infra*, which explains in further detail the specific sections of the Texas Property Code which would be applicable to the Contract, as there were additional amendments made to the Texas Property Code in 2001, 2003 and 2005.

[4] Specifically, the 1995 amendments were only applicable in counties that the Texas Department of Housing and Community

continued to see abuses with respect to contracts for deed in other parts of Texas, and in 2001, further amended chapter 5 of the Texas Property Code to extend these protections to the remainder of the state's contracts for deed. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005).[5]

Looking more specifically at the amendments (as set forth in the Tex. Prop. Code. §§ 5.061-5.085), the court makes note of the myriad of protections that were put into place for purchases under a contract for deed including: (a) a notice provision and protection of equity interest in the event of default (Sections 5.063 & 5.066); (b) a right to cure provision (Section 5.065); and (c) a right to convert the contract into a traditional

---

Affairs had determined were within 200 miles of an international border and had a below-average per capital income and an above average unemployment rate. *See Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005)

[5] Section 5.062(a) of the Texas Property Code, as effective on September 1, 2001, provides that: "This subchapter applies only to a transaction involving an executory contract for conveyance of real property used or to be used as the purchaser's residence or as the residence of a person related to the purchaser within the second degree by consanguinity or affinity, as determined under Chapter 573, Government Code.  For purposes of this subchapter, a lot measuring one acre or less is presumed to be residential property." *See* Act of June 17, 1995, 74th Leg., R.S. Ch. 994, § 3, 1995 Tex. Gen. Laws 4983-84, *amended by* Act of June 13, 2001, 77th Leg., R.S. Ch. 693, § 1, 2001 Tex. Gen. Laws 1319 (current version at Tex. Prop. Code. Ann. § 5.062(a) (West 2005)).  Section 5.062(a) was subsequently amended on September 1, 2005.  Specifically, subsection (a) was rewritten to provide for some additional exceptions to the applicability of the new contract for deed protections.  However, since the Contract was entered into in 2004, the 2001 amended version of Section 5.062(a), as cited above, would apply to the Contract.

financing transaction (Section 5.081).[6]  Section 5.066 is perhaps the most significant provision for purposes of determining whether the Contract should be construed as an executory contract or as a secured financing arrangement.  Specifically, Section 5.066 provides:

> Sec. 5.066. Equity Protection; Sale of Property
>
> (a) If a purchaser defaults after the purchaser has paid 40 percent or more of the amount due or the equivalent of 48 monthly payments under the executory contract, the seller is granted the power to sell, through a trustee designated by the seller, the purchaser's interest in the property as provided by this section.  The seller may not enforce the remedy of rescission or of forfeiture and acceleration.
>
> (b) The seller shall notify a purchaser of a default under the contract and allow the purchaser at least 60 days after the date notice is given to cure the default.  The notice must be provided as prescribed by Section 5.063 except that notice must substitute the following statement:

---

[6] Sections 5.061, 5.063, 5.066-.072, 5.074-.076, and 5.078-.080 were made effective September 1, 2001.  Sections 5.064 and 5.065 were made effective September 1, 2003 and would apply to the Contract, as the Contract was entered into in 2004.  Sections 5.081-5.084 were made effective September 1, 2005 and apply to any action taken after such date regardless of the date on which the purchaser and seller entered into the executory contract, thus, they would apply to any actions made on the Contract after September 1, 2005.

Sections 5.062, 5.073 and 5.077 were amended on September 1, 2005, but the previous versions effective on September 1, 2001 would still be applicable to the Contract.  Section 5.085 was effective on September 1, 2005 and only applied to an executory contract for conveyance entered into on or after September 1, 2005, therefore, it would not apply to the Contract.  Finally, Section 5.0621 was made effective September 1, 2005 and was only effective as to a contract entered into on or after January 1, 2006, so it would likewise not be applicable to the Contract.

YOU ARE NOT COMPLYING WITH THE TERMS OF THE CONTRACT TO BUY YOUR PROPERTY.  UNLESS YOU TAKE THE ACTION SPECIFIED IN THIS NOTICE BY (date) A TRUSTEE DESIGNATED BY THE SELLER HAS THE RIGHT TO SELL YOUR PROPERTY AT A PUBLIC AUCTION.
NOTICE

(c) The trustee or a substitute trustee designated by the seller must post, file, and serve a notice of sale and the county clerk shall record and maintain the notice of sale as prescribed by Section 51.002.  A notice of sale is not valid unless it is given after the period to cure has expired.

(d) The trustee or a substitute trustee designated by the seller must conduct the sale as prescribed by Section 51.002.  The seller must:

 (1) convey to a purchaser at a sale conducted under this section fee simple title to the real property; and

 (2) warrant that the property is free from any encumbrance.

(e) The remaining balance of the amount due under the executory contract is the debt for purposes of a sale under this section.  If the proceeds of the sale exceed the debt amount, the seller shall disburse the excess funds to the purchaser under the executory contract.  If the proceeds of the sale are insufficient to extinguish the debt amount, the seller's right to recover the resulting deficiency is subject to Sections 51.003, 51.004, and 51.005 unless a provision of the executory contract releases the purchaser under the contract from liability.

(f) The affidavit of a person knowledgeable of the facts that states that the notice was given and the sale was conducted as provided by this section is prima facie evidence of those facts.  A purchaser for value who relies on an affidavit under this subsection acquires title to the property free and clear of the executory contract.

(g) If a purchaser defaults before the purchaser has paid 40 percent of the amount due or the equivalent of 48 monthly payments under the executory contract, the seller may enforce the remedy of rescission or of forfeiture and

>acceleration of the indebtedness if the seller complies with the notice requirements of Section 5.063 and 5.064.[7]

Parsing through the statute, the court notes three important things about Section 5.066: (1) that once a purchaser under a contract for deed has paid 40 percent or more of the amount due or the equivalent of 48 monthly payments under the contract,[8] the seller can no longer enforce the remedy of rescission or forfeiture and acceleration; (2) that if there is a default under the contract, the seller is required to conduct, in essence, a non-judicial foreclosure sale, similar to what is conducted for a traditional mortgage creditor; and (3) that the seller is required to disburse to the purchaser any funds received at the foreclosure sale in excess of the remaining debt owed under the contract for deed, thereby preserving the funds that the purchaser has paid to the seller over the life of the contract. Effectively, the court believes that Section 5.066 gives a purchaser much more than just an equitable right to perform the contract but, rather, gives the purchaser equitable title once the purchaser reaches a certain milestone (*i.e.*, paying 40% of the purchase price or making 48 monthly payments), thereby converting the contract for deed from an executory contract to

---

[7] *See* Tex. Prop. Code Ann. § 5.066 (West 2001).

[8] Here, it is undisputed that the Debtor has made at least the equivalent of 48 monthly payments under the Contract.

11

something more in the nature of a secured financing arrangement.[9]

How is this transformation significant to the Motion to Compel? Whether or not the Contract is treated as an executory contract or as a secured financing arrangement determines how the Debtor may ultimately cure the default associated with the Contract. Thus, having found that the Contract should not be classified as an executory contract under Section 365 of the Bankruptcy Code, but rather as a secured financing arrangement, the court must now determine how the Debtor may cure its default under the Contract.

C.  *Curing the Default Under a Contract for Deed Where the Debtor Has Obtained Equitable Title in the Property*

Frequently, a debtor chooses to file a chapter 13 bankruptcy case because chapter 13 provides for a mechanism in which a debtor may cure a default on a note secured by her principal residence over the life of her chapter 13 plan instead of

---

[9] Moreover, Section 5.081 of the Texas Property Code allows a purchaser to actually convert their interest in their principle residence under a contract for deed into a recorded, legal deed of title. *See* Tex. Prop. Code Ann. § 5.081 (West 2005). Thus, it appears that if a purchaser under a contract for deed follows certain guidelines (*i.e.*, delivering the seller a promissory note that is equal in amount to the balance of the total amount owed by the purchaser to the seller under the contract for deed, and that contains the same interest rate, due dates, and late fees as the contract for deed), a purchaser has the opportunity to actually convert a contract for deed into a traditional financing arrangement. Since the Texas Property Code clearly permits a purchaser to ultimately treat a contract for deed as a traditional financing arrangement, the court likewise believes that the Debtor should also be afforded such an opportunity in bankruptcy.

immediately. The ability to cure a default is given to a chapter 13 debtor under both Sections 1322(b)(3) and 1322(b)(5) of the Bankruptcy Code, which provide that the debtor has the ability to cure a default within a reasonable time and to maintain payments during the case with respect to a claim on which the last payment is due after the due date of the final plan payment. Moreover, Section 1322(c)(1) of the Bankruptcy Code places a time constraint on the Debtor's ability to cure a default and only allows a debtor to cure a default up until the principal residence is sold at a foreclosure sale conducted under non-bankruptcy law. It is undisputed that the Homestead Property was not sold at a foreclosure sale prior to the Debtor filing for bankruptcy, and therefore, the Debtor should be permitted to cure the default under the Contract via its chapter 13 plan.

### III. CONCLUSION

The court believes that the recent amendments to the Texas Property Code pertaining to contracts for deed are highly significant and greatly impact how a contract for deed should be treated under the Bankruptcy Code, specifically when a debtor has met a certain payment milestone during the life of the contract for deed. Because the amendments essentially operate to morph the contract for deed from an executory contract into an agreement in which the debtor has an equitable and quantifiable interest (more similar to a mortgage), the court finds that such

13

interest and any other issues related thereto may be addressed in the Debtor's chapter 13 plan under Sections 1322(b)(3), (b)(5), and (c)(1) of the Bankruptcy Code, rather than pursuant to Section 365(b) of the Bankruptcy Code.

The court would note that there is not currently a plan pending in this case, and in fact, there is still a pending motion to dismiss set for October 13, 2011 due to the Debtor's failure to confirm a chapter 13 plan.  Although the court is denying the Motion to Compel, thereby permitting the Debtor to cure the default under the Contract in a chapter 13 plan, the court is in no way commenting on the feasibility of such future plan and will take up any further confirmation issues at the October 13, 2011 hearing.  Accordingly,

**IT IS ORDERED** that the Motion to Compel is **DENIED.**

**###END OF MEMORANDUM OPINION AND ORDER###**